Filed 6/30/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ADAM WILLIAM SMITH et al.,<br><br>     Petitioners,<br><br>v.<br><br>THE SUPERIOR COURT OF ALAMEDA COUNTY,<br><br>     Respondent,<br><br>TESLA, INC.,<br><br>     Real Party in Interest.<br><br>[And four other cases.*] | A174789<br><br>(Alameda County Super. Ct. Nos. 25CV133754, 25CV134790, 25CV134602, 25CV134548 & 25CV134492) |

In *Vaughn, et al. v. Tesla, Inc.* (Super. Court Alameda County, 2017, No. RG17882082) (*Vaughn*), a related class action for racial discrimination and harassment against defendant and real party in interest Tesla, Inc. (Tesla) brought by some of its former employees, the trial court initially granted partial "class certification for resolution of common particular fact issues." In its certification order, the court also ordered that each "Tesla worker who wants to recover damages . . . file a separate lawsuit." The court ultimately decertified the class in *Vaughn*.

---

    * *Aaron William Barnette et al. v. Superior Court* (No. A174795); *Alexis Bibbens et al. v. Superior Court* (No. A174796); *Aesiana Hodges et al. v. Superior Court* (No. A174797); *Aaron Brown et al. v. Superior Court* (No. A174799).

Plaintiffs and petitioners Adam William Smith, Akeem Barnes, Alethea Libran, along with 437 other individuals (collectively, plaintiffs), are former *Vaughn* class members.  After the trial court ordered plaintiffs to file separate lawsuits in its class certification order, they sued Tesla, their former or current employer, in five separate actions.  The complaint in each action joined 54 to 98 individual plaintiffs and alleged claims of racial discrimination and harassment at a single factory owned by Tesla.  In response to the five actions filed by plaintiffs, the court issued an order to show cause why it should not find an "inappropriate joinder of plaintiffs." Following argument by the parties, the court found misjoinder and ordered that "all [p]laintiffs except for the first name on the complaint must be dismissed" and "must file their own single [p]laintiff complaints."  Plaintiffs then filed five petitions for writ of mandate—one for each action.  We consolidated the petitions for purposes of briefing and decision, stayed all proceedings, and issued an order to show cause.

We now conclude that the trial court erred in finding misjoinder and requiring that each individual plaintiff file a separate complaint. Accordingly, we grant the petitions and vacate the stay.

## I. BACKGROUND

A. *Vaughn* Class Action

The *Vaughn* complaint was filed in November 2017 on behalf of a putative class of Black employees who allegedly suffered racial discrimination and harassment while working in Tesla's production facility in violation of the Fair Employment and Housing Act (FEHA).  (Gov. Code, § 12940, subd. (a).)  The complaint alleged that these employees were regularly subjected to offensive racial conduct, including being called the N-word by other employees and supervisors.  It further alleged that Tesla had

2

"a policy of creating a hostile work environment at the Tesla Factory." More specifically, there was a "pattern and practice of race discrimination" at the Tesla Factory and despite having "actual knowledge of the illegal conduct," Tesla "maintain[ed] a pattern or practice of ignoring and/or failing to act promptly to investigate harassment complaints" and "conduct[ed] inadequate investigations."

In June 2023, the *Vaughn* plaintiffs moved for class certification. The proposed class was " 'Black and/or African Americans who were employed on the production floor at the Tesla Factory at any time from November 9, 2016 to the final disposition of this action.' " The plaintiffs proposed a two-phased *Teamsters*[1] model for resolving the case in which the trial court would adjudicate Tesla's alleged pattern or practice of racial harassment in Phase I and then its liability, if any, to individual class members in Phase II. Tesla opposed class certification, arguing that each worker had an individualized experience and that common issues did not predominate.

The trial court granted the motion for class certification in part. Specifically, it certified the class as to three issues: (1) whether "there [was] a pattern or practice of pervasive race harassment at the Tesla factory"; (2) whether Tesla knew "or should have known of [this] pattern or practice"; and (3) if so, whether Tesla "fail[ed] to take immediate and appropriate corrective action." The court, however, declined to certify "a class of Tesla workers to pursue a class claim for individual liability or damages" and ordered that each "worker who wants to recover damages must file a separate

---

[1] *International Brotherhood of Teamsters v. United States* (1977) 431 U.S. 324, 335.

lawsuit."[2]  The court held that "an individual Tesla worker must still prove that they personally experienced harassment."

In January 2025, the *Vaughn* plaintiffs moved for leave to file a fourth amended complaint to add 531 class members as new, individual plaintiffs. They argued that the amendment was justified based on the running of the applicable statute of limitations after the class notice was sent out in December 2024.  They further argued that joinder of these new individual plaintiffs in one action was proper under Code of Civil Procedure section 378.[3]  Finally, they noted that after the filing of this action, Tesla moved its headquarters out of California and therefore may try to remove any subsequently filed cases to federal court.  Tesla opposed, contending that it was an improper request for reconsideration of the trial court's class certification order and that the proposed addition of 531 new plaintiffs was untimely and would be unfairly prejudicial.

The trial court denied the motion for leave to amend.  The court emphasized that it had "previously found that [joinder] would not be appropriate" in its class certification order.  That order noted that under the proposed *Teamsters* model, "joinder of perhaps hundreds of plaintiffs in a single case might be permissible because the claims of the Tesla workers arise 'out of the same transaction, occurrence, or series of transactions or occurrences' ([§] 378), but the joinder of so many . . . different persons at different times or locations might not be 'in the interests of justice' ([§] 379.5)."  The court then denied the motion "procedurally because it is in

---

[2] The trial court further held "that the equitable tolling effect of this putative class action ends ten days after notice is given to the class of the limited issues class certification."

[3] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

4

essence a motion for decertification and to have the case proceed as a single case with over 530 plaintiffs." It also denied the motion "substantively because the claims of the proposed new 531 plaintiffs do not arise 'out of the same transaction, occurrence, or series of transactions or occurrences' " under section 378. Finally, the court pointed to the impracticality of conducting discovery as well as "hav[ing] a single trial on the claims of all 531 plaintiffs" as additional reasons for denying the motion.

The *Vaughn* plaintiffs sought writ review of the trial court's order. The court filed a response that summarized its " 'local experience' " managing mass joinder cases. It argued that permitting "joinder of hundreds of plaintiffs in a single case . . . can be administratively unwieldy and impose significant burdens on court staff." It also argued that such a joinder meant it would "collect a single filing fee for a single case even though it is managing the claims of hundreds of plaintiffs." We denied the petition because it "fail[ed] to address all grounds upon which the motion to amend was denied." (*Vaughn et al. v. The Superior Court of Alameda County* (June 27, 2025, A173053).)

In October 2025, Tesla moved to decertify the class in *Vaughn*. Tesla argued that trial would not be manageable because the *Vaughn* plaintiffs admitted in a recent filing that "they will not be able to obtain deposition cooperation from 200 randomly selected class members in time to prepare for trial," as required by the trial court's stipulated discovery orders. The *Vaughn* plaintiffs did not oppose the motion and accepted that " 'the class must be decertified based upon the absence of a manageable trial plan.' " The court therefore granted Tesla's motion and decertified the class. It ordered that notice be sent out to the absent class members and that the five named plaintiffs would proceed with their claims.

5

B. Subject Joinder Actions

In late July and early August 2025, plaintiffs (440 former *Vaughn* class members) filed the five complaints at issue in this appeal: (1) *Smith et al. v. Tesla, Inc., et al.* (95 Tesla employees between 2014 to 2019); (2) *Brown et al. v. Tesla, Inc., et al.* (98 Tesla employees between 2018 and 2023); (3) *Hodges et al. v. Tesla, Inc., et al.* (98 Tesla employees from 2018 to the present); (4) *Bibbens et al. v. Tesla, Inc. et al.* (54 Tesla employees between 2018 and 2025); and (5) *Barnette et al. v. Tesla, Inc., et al.* (95 Tesla employees from 2016 to the present). Like the *Vaughn* complaint, the five complaints included causes of action under FEHA for racial discrimination, racial harassment, and failure to prevent discrimination and harassment. The complaints alleged that plaintiffs "worked at the same Tesla factory and were subjected to similar race-based harassment and/or mistreatment, and worked under the same common policies or procedures." They further alleged that "Tesla's practice was not to systematically and consistently address racist conduct" and that its "failure to properly prevent, stop and put an end to the ongoing and persistent race-based misconduct is, itself, a common transaction or occurrence . . . , common to each of the joined [p]laintiffs." Finally, they "incorporate[d] by reference the allegations" in the *Vaughn* complaint.

A few weeks after the complaints were filed, the trial court issued an order to show cause (OSC) why it should not order that: (1) "there is inappropriate joinder of plaintiffs in each of the [five] cases"; and (2) "in each of the [five] cases that all plaintiffs except for the first name on the complaint must be dismissed and the other plaintiffs must file their own single plaintiff complaints." The court highlighted that in denying the motion to amend in *Vaughn,* it had already determined "that claims by 531 persons in a single complaint [was] improper." And for those same reasons, it was concerned

6

"that the claims of the 440 plaintiffs [were] not properly joined given the lack of temporal overlap" as well as the anticipated "differences in work location, supervisor, and harassment or discrimination experienced." The court also asked the parties to "address [its] concerns as stated in the order denying the motion to add 531 plaintiffs to the *Vaughn* complaint."

In response to the OSC, plaintiffs argued that joinder was proper under section 378 and that any anticipated differences in plaintiffs' experiences did not justify finding misjoinder at this stage of the proceedings. Plaintiffs also argued that requiring individual complaints would be unfair because Tesla moved its headquarters to Texas after *Vaughn* was filed and could therefore "seek removal on diversity grounds of any *new* lawsuit . . . filed by a non-Texas plaintiff." Plaintiffs further explained that once discovery is completed, the trial court "will have the authority to order separate trials or take other appropriate action" pursuant to section 379.5. Finally, with respect to the court's budgetary concerns, plaintiffs stated that they were amenable to the court "charging a reasonable increased filing fee above the standard complex civil action filing fee but, . . . less than the individual filing fee multiplied by the number of plaintiffs who are joined." Tesla countered that the court should find misjoinder and order that plaintiffs file separate actions.

Following oral argument, the trial court found misjoinder and ordered in the five cases that "all [p]laintiffs except for the first name on the complaint must be dismissed" and that each of those dismissed plaintiffs must file an individual complaint. The court held that "evidence in the *Vaughn* class action demonstrates that different workers allegedly experienced different forms of harassment in different locations at different times" and that there was "virtually no scenario where a case would proceed

7

to a common trial with over 50 plaintiffs." It continued that it "has experience in complex multi-plaintiff litigation, can anticipate the problems that [these] complaints will cause, and does not need to wait for the problems to arise." The court further noted that if some "cases are removed to federal court, then the federal courts have the ability to manage related cases." Finally, with respect to filing fees, it concluded that it "has found no authority that it can order increased fees for a multi-plaintiff case or order decreased fees when multiple plaintiffs file individual related cases."

Plaintiffs filed Verified Petitions for Writ of Mandate (petitions) in each of the five cases and asked for an immediate stay in each case. We stayed all trial court proceedings and consolidated the five petitions for purposes of briefing and decision. We thereafter issued an order to show cause "why the relief requested in the petitions should not be granted." In doing so, we found writ review appropriate because the petitions raise issues that are likely to recur (*Hiona v. Superior Court* (2020) 48 Cal.App.5th 866, 871) and present legal questions of significant importance (*Cohen v. Superior Court* (2024) 102 Cal.App.5th 706, 715).

## II. <u>DISCUSSION</u>

### A. <u>Law on Permissive Joinder</u>

Section 378, the permissive joinder statute, provides that "[a]ll persons may join in one action as plaintiffs" if their right to relief arises "out of the same transaction, occurrence, or series of transactions or occurrences" and if there is "any question of law or fact common to all." (§ 378, subd. (a).) Unlike other procedural statutes that "commit discretion to the trial *judge*, [section 378] commits discretion to the plaintiffs . . . to decide whether to join together in a common action" if "there is a right to relief arising out of the same series of transactions." (*Petersen v. Bank of America Corp.* (2014) 232

8

Cal.App.4th 238, 248 (*Petersen*).)  No commonality in the damages sought by each plaintiff is necessary, as what matters "is that *liability* is amenable to mass action treatment." (*Id.* at p. 253.)

If the plaintiffs have chosen to join their actions under section 378, "the [trial] court may make such orders as may appear just to prevent any party from being embarrassed, delayed, or put to undue expense, and may order separate trials or make such other order as the interests of justice may require." (§ 379.5.)  Further, the court may sustain a demurrer based on "a defect or misjoinder of parties." (§ 430.10, subd. (d).)

When a trial court sustains a demurrer without leave to amend and dismisses claims for misjoinder under section 430.10, subdivision (d), we review the court's order de novo. (*Moe v. Anderson* (2012) 207 Cal.App.4th 826, 835. (*Moe*).)  In conducting that review, we "assume the truth of the facts alleged in the complaint and the reasonable inferences that may be drawn from those facts." (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 883 (*Miklosy*).)  This includes "all reasonable inferences in favor of" joinder. (*Liapes v. Facebook, Inc.* (2023) 95 Cal.App.5th 910, 916.)

Thus, if the trial court had followed the procedure established by the Legislature for determining whether a misjoinder has occurred under section 378, the standard of review would have been clear.  The court, however, jumped the gun and issued an OSC before Tesla filed a demurrer.  Neither the court nor the parties cite any precedent for this approach and we could find none.  We need not, however, determine whether the court acted appropriately in order to determine the applicable standard of review. Regardless of whether an OSC was permissible here, we see no reason to treat the court's order dismissing all of plaintiffs' actions except for the

9

actions of the first-named plaintiffs for misjoinder any differently than an order sustaining a demurrer on the same ground.  The court issued its order at the pleadings stage before the parties had an opportunity to conduct discovery.  Moreover, the court itself conceded that its "OSC was in essence a demurrer based on misjoinder."  We therefore apply the standard of review applicable to an order sustaining a demurrer that we described above.

Finally, although the management of discovery and case administration generally fall within the trial court's discretion (*Property Reserve, Inc. v. Superior Court* (2016) 6 Cal.App.5th 1007, 1018), we review de novo a court's ruling to the extent it "is based on assertedly improper criteria or incorrect legal assumptions" (*Hypertouch, Inc. v. Superior Court* (2005) 128 Cal.App.4th 1527, 1537).  Accordingly, whether the court properly found misjoinder under section 379.5 if plaintiffs met the requirements for joinder under section 378 is a question of law and is not, as suggested by the court, reviewed for abuse of discretion.

B. Same Transaction or Occurrence

Tesla contends that the trial court properly found misjoinder under section 378 because plaintiffs failed to allege that their claims arise from the same transaction or occurrence.[4]  Like the court, Tesla points out that the acts of discrimination and harassment "occurred at different dates and times in different locations" at the Tesla factory.  We are unpersuaded.

" '[S]tatutes relating to joinder' " like section 378 " '*should be liberally construed, unless expressly forbidden*, to the end that a multiplicity of suits may be prevented.' " (*Petersen, supra*, 232 Cal.App.4th at p. 249, quoting *Joerger v. Pacific Gas & Electric Co.* (1929) 207 Cal. 8, 20.)  Consistent with

---

[4] Neither Tesla nor the trial court dispute that there are questions of law or fact "common to all."  (§ 378.)

10

this presumption in favor of joinder, a right to relief arises from the same transaction or occurrence under section 378 so long as " 'there is *any factual relationship* between the claims joined.' " (*Petersen,* at p. 249.)

Division Three of this District applied this broad construction of section 378 in *Anaya v. Superior Court* (1984) 160 Cal.App.3d 228 (*Anaya*). In that case, over 200 employees and their family members alleged injuries caused by the employees' exposure to chemicals at their employer's manufacturing facility over the span of 20 to 30 years and joined their claims against that single employer in two complaints. (*Id.* at p. 231.) Holding that the trial court erred in finding misjoinder, Division Three found that the plaintiffs "were all involved in the same series of transactions or occurrences." (*Id.* at p. 233.) As it explained, all of the employees were "exposed to harmful chemicals at one location over a period of many years," and the fact that their exposure occurred on different occasions "does not destroy the community of interest" linking them together. (*Ibid*.)

In *Petersen, supra*, 232 Cal.App.4th 238, another Court of Appeal also broadly construed section 378 to conclude that the joinder of 965 home loan borrower plaintiffs in a single complaint against the same lender was proper because they alleged that they were harmed by the same deceptive and fraudulent practices. (*Id*. at pp. 241–242.) In finding that the plaintiffs' claims arose from the same series of transactions, the court explained that while "the individual damages among these 965 plaintiffs . . . vary widely," joinder was proper "based on commonality regarding liability." (*Id*. at pp. 252–253.) Specifically, it pointed to "the common plan" or scheme alleged in the complaint, including that the defendant "deliberately encouraged dishonest appraisals" and "encouraged its loan officers to conceal loan terms." (*Id*. at p. 252.) Finally, the court emphasized that "two overall policies of the

11

law"—access to justice and the conservation of judicial resources—were "served by joinder in this instance." (*Id.* at p. 253.)[5]

Like the plaintiffs in *Anaya* and *Petersen*, plaintiffs allege in their five complaints that Tesla engaged in a "common" policy or practice that harmed all of them. Specifically, plaintiffs allege that Tesla was aware of ongoing racial harassment at its factory and that Tesla nonetheless engaged in a "*pattern and practice*" of "*systematically and consistently*" ignoring that "racist conduct," which "caused each [p]laintiff to be exposed" to such conduct at the factory. (Italics added.) Because we must liberally construe these allegations in favor of joinder (*Petersen, supra,* 232 Cal.App.4th at p. 249), they are sufficient to justify joinder based on a commonality of liability (*id.* at p. 252 [joinder proper where the plaintiffs alleged a "common plan" that harmed each plaintiff]; *Anaya, supra,* 160 Cal.App.3d at p. 233 [joinder proper where the plaintiffs were "exposed to harmful chemicals at one location over a period of many years by inhalation, drinking of water, and physical contact"]). That plaintiffs alleged racial discrimination and harassment occurring at different times and in different locations within the Tesla factory does not mean that their claims did not arise out of the same transaction or occurrence. The "salient point is that *liability* is amenable to mass action treatment." (*Petersen,* at p. 253.)

*Moe, supra,* 207 Cal.App.4th 826 bolsters our conclusion. There, the plaintiffs (two patients and their spouses) filed a lawsuit against the same

---

[5] Tesla argues that *Petersen* "nowhere suggested that joinder under [s]ection 378 at the expense of judicial efficiency effectuates the statute's purpose." Although "joinder [statutes] 'should be liberally construed in furtherance of administrative efficiency,'" this does not mean, as Tesla suggests, that trial courts have the power to dismiss the action of a properly joined plaintiff based on lack of manageability or efficiency. (*Petersen, supra,* 232 Cal.App.4th at p. 249.)

doctor, alleging that he separately sexually assaulted the patients on different occasions. (*Id*. at p. 829.) The plaintiffs also sued the doctor's employer. (*Ibid*.) The trial court sustained both defendants' demurrers based on misjoinder, reasoning that each of the plaintiffs' claims were " 'separate and distinct from the other' " and did " 'not arise out of the same transaction or occurrence.' " (*Id*. at p. 830.) The Court of Appeal affirmed as to the doctor. (*Id*. at p. 836.) But it reversed as to the doctor's employer because that employer was "alleged to have engaged in a series of transactions, i.e., the negligent hiring and supervision of [the doctor], which exposed [the] plaintiffs to [the doctor's] predatory conduct." (*Id*. at pp. 835–836.) Similarly, the complaints in this case allege that Tesla engaged in a series of transactions, i.e., a policy or practice of systematically and consistently ignoring and refusing to address racist conduct at its factory, which exposed plaintiffs to racial harassment.

Tesla attempts to distinguish *Moe* by arguing that in this case, unlike *Moe*, there is "no common individual who is alleged to have committed the offensive conduct, nor any common individual alleged to have hired the alleged offenders" or "investigated them." But joinder does not require that a *single* individual commit all of the alleged misconduct where, as here, a "common" plan or practice is alleged. (*Petersen, supra,* 232 Cal.App.4th at p. 252 [as part of its deceptive practices, the corporate defendant "encouraged its loan officers to conceal loan terms" and "influence[d] appraisers to dishonestly inflate appraisals"].) And Tesla, like the doctor's employer in *Moe*, *is* the common entity alleged to have allowed misconduct that it knew about, i.e., racial harassment, to persist in its factory by systematically ignoring it.

Tesla also counters with *David v. Medtronic, Inc.* (2015) 237

Cal.App.4th 734 (*David*), but that case is distinguishable. *David* involved 37 plaintiffs residing in different states who had the same medical device implanted in them for a variety of off-label uses and suffered a wide array of injuries caused by that device. (*Id.* at pp. 737–738.) They sued the manufacturer of the device, among others, alleging that it was liable because it "was aware of the dangers of off-label use" but nonetheless promoted off-label uses. (*Id.* at p. 738.) The defendant moved to sever each plaintiff's claims for misjoinder under section 378. (*David*, at p. 738.) And the trial court granted the motion.[6]

The Court of Appeal affirmed, finding that joinder was improper because the plaintiffs' "claims do not arise out of the same transaction or series of transactions." (*David, supra,* 237 Cal.App.4th at p. 741.) Unlike cases where the pleading alleges "a single scheme, depending on the same basic misrepresentations," the court concluded that "the only common factor [here] is that [the] plaintiffs each had [the device] . . . implanted in them." (*Ibid.*) Indeed, it found no allegations "that [the plaintiffs] each had the same class of spinal surgery, based at least in part on the same representation, and that [the device] failed in each of them in the same way." (*Ibid.*) To the contrary, the court noted that each plaintiff "had different surgeries,

---

[6] The defendant also argued that "even if [the] plaintiffs were properly joined, the interests of judicial economy weighed in favor of severance . . . under . . . section 379.5." (*David, supra,* 237 Cal.App.4th at pp. 738–739.) Although the trial court granted the defendant's motion on this ground as well, the plaintiffs only challenged the trial court's finding of misjoinder under section 378. (*Id.* at p. 740.) As a result, the Court of Appeal did not address the trial court's authority under section 379.5, holding that any argument that "the order was not a proper exercise of the [trial] court's discretion under . . . section 379.5" was waived. (*Ibid.*) Thus, *David* provides no support for the argument that the trial court has discretion to find misjoinder under section 379.5.

performed by different surgeons, with different knowledge and exposure to different representations by [the defendants]." (*Ibid*.) By contrast, plaintiffs in this case allege that they all endured "race harassment and a hostile work environment" as a direct result of Tesla's common policy or practice of turning a blind eye to racist conduct in a single factory. This is sufficient to establish that plaintiffs' claims arise from the same "series of transactions or occurrences" for purposes of section 378.

*Aghaji v. Bank of America, N.A.* (2016) 247 Cal.App.4th 1110, another case cited by the trial court and Tesla, is inapposite as well. There, 222 "homeowners from all over the country" filed mass joinder actions "against various financial institutions and mortgage loan servicers." (*Id*. at pp. 1112–1113.) In affirming dismissal based on misjoinder, the Court of Appeal held that despite numerous amendments and evolving legal theories as to liability and damages, the complaint still "included only generalized and conclusory allegations" without any allegations "specific to any particular party." (*Id*. at p. 1115.) More notably, there was *no* allegation of any overarching plan or scheme. Based on the "unique transactions" each plaintiff experienced, the court concluded that "[e]ach of [their] claims clearly arises from a different transaction or occurrence and presents distinct questions of law or fact." (*Id*. at p. 1121.) Again, plaintiffs in this case did allege a common policy or practice of just one defendant, Tesla, that harmed them.

*Coleman v. Twin Coast Newspaper, Inc.* (1959) 175 Cal.App.2d 650 is even less helpful to Tesla and the trial court. There, three chiropractors alleged that three defendants wrongfully entered each of their offices. (*Id*. at pp. 651–652.) In affirming the trial court's misjoinder finding, the Court of Appeal reasoned that "[t]hree separate and distinct plaintiffs are suing to recover damages for alleged trespasses on separate and distinct premises and

15

for alleged conversions of separate and distinct property." (*Id*. at p. 654.) Indeed, the only alleged common fact was that the three plaintiffs, "practicing in the same city, underwent scrutiny during the course of the same day." (*Ibid*.) By contrast, plaintiffs in this case all worked at the same Tesla factory and alleged injuries as a result of Tesla's policy or practice of ignoring or condoning racial harassment.

Similarly, the trial court's decertification order in *Vaughn* does not compel a contrary conclusion. According to Tesla, that order "weighs *against* commonality for joinder" because the class "was decertified based on [the] [p]laintiffs' inability to muster sufficient evidence of a 'pattern or practice of race-based harassment.' " (Boldface omitted.) But the inability of the plaintiffs in *Vaughn* to get "200 representative worker witnesses . . . [¶] . . . to appear for deposition and for trial" as required by the stipulated trial plan does not mean that the individually represented plaintiffs in this case will be unable to do so. Indeed, the court made clear in *Vaughn* that its decertification order was "based on the facts of *this case* and should not be read to suggest that a class trial on whether there is a pattern or practice of workplace harassment is inherently unmanageable." (Italics added.)

In any event, Tesla provides no authority suggesting that plaintiffs are bound in any way by concessions made by different parties and different attorneys or rulings made in a different case. (*Harris v. Harris* (1960) 186 Cal.App.2d 788, 790 ["each case must be decided on its own merits"].) Moreover, at the pleadings stage, we must "assume the truth of the facts alleged in the complaint." (*Miklosy, supra* 44 Cal.4th at p. 883.) This includes plaintiffs' allegations that Tesla had a policy or practice of ignoring racial misconduct. More importantly, plaintiffs have had *no* opportunity to conduct discovery or present evidence to rebut any conclusions that the trial

16

court may have drawn from its experiences in *Vaughn*. Allowing the court to find misjoinder based on those experiences would violate due process.[7]

Tesla's reliance on federal district court orders finding misjoinder under rule 20 of the Federal Rules of Civil Procedure is also misplaced.[8] Although "[s]ection 378 is based on rule 20" (*Petersen, supra,* 232 Cal.App.4th at p. 249), those federal cases are readily distinguishable because none involved a common policy or practice.[9] For example, in *Jahangiri v. Arcadis U.S., Inc.* (N.D.Cal. Aug. 18, 2025, No. 25-CV-03682-SK) 2025 U.S. Dist. LEXIS 160080, at p. *22, the district court concluded that while the plaintiffs "allegedly experienced a 'systematic pattern of discriminatory treatment,' " the pleading "lack[ed] facts supporting the notion that [the d]efendant had a pattern or policy of discrimination." In *Robinson v. Geithner* (E.D.Cal. Jan. 10, 2011, No. 1:05-CV-01258-LJO-SKO) 2011 U.S. Dist. LEXIS 2054, at p. *19, the district court relied on the plaintiffs' failure to "point to one agency-wide *policy* under which they all suffered discrimination." (Italics added.)

---

[7] We express no opinion as to whether the trial court may find misjoinder on summary judgment.

[8] All further rule references are to the Federal Rules of Civil Procedure (28 U.S.C.) unless otherwise specified.

[9] These federal cases also have limited relevance here because of the more stringent pleading standard under federal law. (See *Morris v. JPMorgan Chase Bank, N.A.* (2022) 78 Cal.App.5th 279, 304–305, fn. 14 ["trial courts should be cognizant that federal district judges have more latitude to dismiss claims at the pleading stage . . . than California trial judges have under our traditional notice pleading standards"].) In a demurrer under California law, " 'the facts alleged in the pleading are deemed to be true, *however improbable they may be.*' " (*Hacker v. Homeward Residential, Inc.* (2018) 26 Cal.App.5th 270, 280, italics added.) By contrast, under federal law, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible on its face.*' " (*Ashcroft v. Iqbal* (2009) 556 U.S. 662, 678, italics added.)

And in *Wynn v. NBC* (C.D.Cal. 2002) 234 F.Supp.2d 1067, 1077–1078, the plaintiffs sought to join 40 separate defendants in one action, "alleging an industry-wide 'pattern or practice' of discrimination." The court concluded that there were "no allegations of an actual concert of action among all of the [d]efendants to unite in a discriminatory hiring scheme." (*Id.* at p. 1080.) Here, there is just *one* employer, Tesla, who allegedly had a *single* company-wide policy or practice.

Finally, to the extent that the trial court relied on section 430.10, subdivision (d) in finding misjoinder, it erred for the reasons discussed above. (*Anaya, supra*, 160 Cal.App.3d at p. 231 [demurrer based on misjoinder under section 430.10 is analyzed under the standard set forth under section 378 for joinder].)

Accordingly, we find that the trial court erred in finding misjoinder under section 378. In doing so, we reject the argument that the court may consider case manageability or administration in determining whether joinder is proper under section 378.[10] Although the court may address these practical concerns under section 379.5, they "do *not* furnish grounds for finding a misjoinder of plaintiffs" under section 378. (*Anaya, supra,* 160 Cal.App.3d at pp. 233–234, italics added.) Indeed, under the language of section 378, "it is the plaintiffs," and *not* the court, "who make the initial decision to file jointly." (*Petersen, supra*, 232 Cal.App.4th at p. 248.)

C. Discretion Under Section 379.5

Even if plaintiffs properly joined their claims under section 378, both the trial court and Tesla contend that it was within the court's discretion to order single plaintiff complaints under section 379.5 based on considerations

---

[10] Our holding does not depend on any local policy or practice of the trial court.

18

like case manageability and judicial economy. We disagree.

Section 379.5 gives the trial court "broad authority to sever the trials of properly joined parties" or to make other orders " 'as the interests of justice may require.' " (*Pilliod v. Monsanto Co.* (2021) 67 Cal.App.5th 591, 625, abrogated on another ground in *Monsanto Company v. Durnell* (June 25, 2026, No. 24-1068) 609 U.S. ___. This includes orders that "prevent any party from being embarrassed, delayed, or put to undue expense." (§ 379.5.) The court may also order separate trials of any issues or causes of action "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." (§ 1048.) While these statutes provide the court with wide latitude to sever *the trials* of parties or claims, they do not allow the court to usurp plaintiffs' right to join their claims under section 378.

Indeed, section 378 expressly "commits" the discretion to join claims that meet its requirements "to the *plaintiffs themselves*," rather than "the trial *judge*." (*Petersen*, *supra*, 232 Cal.App.4th at p. 248.) By requiring each individual plaintiff to file a separate complaint even though their claims meet the requirements of section 378, the trial court has adopted a procedure that conflicts with section 378. This it cannot do. (See *Estrada v. Royalty Carpet Mills, Inc.* (2024) 15 Cal.5th 582, 598 (*Estrada*) [" 'Courts . . . do not have the authority to adopt procedures or policies that conflict with statutory law' "].)

Tesla and the trial court counter that section 379.5's catchall phrase, "other order as the interests of justice may require," gives the court the authority to find misjoinder notwithstanding section 378. But section 379.5 specifies that the court may make such an order only *after* the "parties have been joined under [s]ection 378." (§ 379.5.) Thus, section 379.5, at most, contemplates some limits on joinder; it does not contemplate the wholesale

19

prohibition or dismissal of joinders under section 378.

The trial court's proposed interpretation of section 379.5 also violates our canons of statutory interpretation. " 'A court must, where reasonably possible, harmonize statutes, reconcile seeming inconsistencies in them, and construe them to give force and effect to all . . . provisions.' " (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 805.) The court, however, asks us to give it the power under section 379.5 to disregard or nullify section 378. We decline to interpret section 379.5 in such a manner especially where, as here, section 378—which governs only permissive joinders—is more specific than section 379.5—which governs the court's general authority to manage joined cases. (See *Collection Bureau of San Jose v. Rumsey* (2000) 24 Cal.4th 301, 310 ["more specific provisions take precedence over more general ones"].)

Section 430.10 reinforces our conclusion. In listing "misjoinder of parties" as grounds for a demurrer, the Legislature explicitly authorized the dismissal of an action based on misjoinder. (§ 430.10, subd. (d).) But the Legislature provided no such authorization in section 379.5. This omission confirms that the Legislature did not intend to vest trial courts with such authority through section 379.5. (*In re Jennings* (2004) 34 Cal.4th 254, 273 [ " 'It is a settled rule of statutory construction that where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed with reference to the different statutes' "].) Indeed, a contrary conclusion would render section 430.10, subdivision (d) superfluous. (*People v. Hall* (2016) 247 Cal.App.4th 1255, 1266 ["The general rule is that 'statutes are to be construed to give meaningful effect to all of their provisions, and to avoid rendering any

20

language superfluous' "].)

*Estrada, supra*, 15 Cal.5th 582 is also instructive. There, the California Supreme Court considered "whether trial courts have the inherent authority to strike a Labor Code Private Attorneys General Act of 2004 [PAGA] claim on manageability grounds." (*Id*. at p. 594.) In concluding that they did not, our high court explained that "the inherent power of a trial court to dismiss claims 'has in the past been confined to two types of situations: (1) the plaintiff has failed to prosecute diligently . . . ; or (2) the complaint has been shown to be "fictitious or sham" such that the plaintiff has no valid cause of action.' " (*Id*. at p. 601.) The court continued that "the Legislature provided comparatively detailed statutory requirements for maintaining a PAGA claim" and that manageability "is not one of the requirements." (*Id*. at p. 613.) It therefore concluded that there was "little reason to presume that the Legislature would intend for courts to have broad extra[-]statutory inherent authority to strike PAGA claims that the Legislature has itself authorized." (*Ibid*.)

Likewise, the Legislature set forth the requirements for permissive joinder in section 378 as well as the procedure for finding misjoinder in section 430.10. It also equipped trial courts with tools to manage cases *after* they have been joined, such as orders "to prevent any party from being embarrassed, delayed, or put to undue expense" or severing trials. (§ 379.5.) The trial court and Tesla argue that *Estrada* is inapposite because it did not construe section 379.5 and its catchall language. But *Estrada* did construe section 128 (*Estrada, supra,* 15 Cal.5th at p. 603)—which, like section 379.5, gives trial courts the power "[t]o amend and control its process and orders so as to make them conform to law and *justice*" (§ 128, subd. (a)(8), italics added). Despite the broad discretionary authority granted by section 128, our

21

high court concluded that section 128 did not give trial courts the "inherent power to strike a claim due to manageability concerns." (*Estrada,* at p. 603.) The same holds true here. Notwithstanding its grant of broad discretionary authority, section 379.5 does not grant the trial court the inherent power to dismiss the actions of properly joined plaintiffs and require all of them to file individual complaints.

The trial court also points to its broad authority to manage complex cases under California Standards of Judicial Administration, standard 3.10(a), which provides that "[i]n complex litigation, judicial management should begin early and be applied continuously and actively." According to the court, the "Single-Plaintiff Order and the other orders of local trial judges demonstrate an effort to actively manage complex cases." But as our high court recently pointed out, standard 3.10(a) "neither identifies any inherent authority nor establishes that [trial] courts have the power to strike claims to foster judicial management." (*Estrada, supra,* 15 Cal.5th at p. 603, fn. 15.) By that same token, standard 3.10(a) does not identify or establish any power of the trial court to dismiss a properly joined action under section 378.

The trial court next cites federal district court orders that considered case manageability in dismissing mass joinder actions. But those orders relied on rule 21, which provides that although "[m]isjoinder of parties is not a ground for dismissing an action," "the court *may at any time*, on *just terms*, add or drop a party" or "sever any claim against a party." (Rule 21, italics added.) For example, in *State Automobile Mutual Ins. Co. v. Hyundai Motor Am.* (C.D.Cal. Feb. 27, 2024, No. 8:23-CV-00439-JLS-JDE) 2024 U.S. Dist. LEXIS 34757, at pp. *3–*4, the district court "exercise[d] its discretion under Rule 21 to dismiss all but the first named [p]laintiff from [the] action" after finding that joinder "would undermine trial efficiency, and would prejudice

22

[the d]efendants."  Likewise, in *Corley v. Google, Inc.* (N.D.Cal. 2016) 316 F.R.D. 277, 293, the district court exercised its power under rule 21 to sever 876 joined plaintiffs and order that they each file individual complaints.  But as the trial court acknowledges, there is no California counterpart to rule 21.  Federal cases applying rule 21 are therefore irrelevant here.  (See *Estate of Morse* (1970) 9 Cal.App.3d 411, 415 [federal case law may be followed where the language of a state statute is "substantially identical with that of the federal statute" and is its "counterpart"].)

Indeed, the Legislature's decision to enact section 378, the California counterpart to rule 20, but *not* a counterpart to rule 21, is telling.  While section 379.5 grants the trial court the power to sever *trials*, it does not grant the court the power to dismiss or drop a party from an action like rule 21.  This strongly suggests that the court lacks that power under section 379.5.  (See *Page v. Superior Court* (1995) 31 Cal.App.4th 1206, 1215–1216 ["the distinct language of FEHA evidences a legislative intent different from that of Congress"].)

Finally, the trial court argues that it may consider the potential loss of filing fees under section 379.5.  Because the "joinder of hundreds of plaintiffs in a single case means that a trial court collects a single filing fee . . . even though it is managing the claims of hundreds of plaintiffs," the court contends that it may require plaintiffs to pay separate filing fees by filing individual complaints.  But filing fees, including the additional fee for a complex civil case, are established by the Legislature, and *not* by the court.  (Gov. Code, §§ 70611, 70616.)  Moreover, section 379.5 gives the court the power to make "such orders as may appear just to prevent any *party* from being . . . put to undue expense."  (Italics added.)  But it contains no

23

analogous language giving the court the power to make orders to prevent undue expense to *the court itself*.

Although we vacate the trial court's order, we are sympathetic to its plight. There are 440 individual plaintiffs, and each plaintiff is alleging different incidents of racial harassment and different damages. Although there appears to be common questions of law or fact based on the pleadings, the claims of most, if not all, plaintiffs will likely have to be resolved separately. The court's challenge is therefore formidable, and we commend it for its willingness to manage plaintiffs' claims "as best [it] can with the available tools."

Some of those tools have been identified by other courts, including our high court. (See, e.g., *Estrada, supra*, 15 Cal.5th at pp. 616–620; *Petersen, supra*, 232 Cal.App.4th at pp. 254–255.) In addition, the trial court may order separate trials (by party or claim), which would presumably address its concern about the feasibility of conducting one trial "with over 50 plaintiffs where each plaintiff was exposed to different harassment and suffered different injuries." (§§ 379.5, 1048.) The court may also require that plaintiffs, as they themselves suggest, "create and maintain tracking spreadsheets" to help alleviate the court's administrative concerns. We are confident that there are other measures that the court may take to manage plaintiffs' claims short of a blanket prohibition on their joinder in one action.

To the extent that those measures prove inadequate, however, the solution would appear to lie with the Legislature. For example, the trial court's concern about the inadequacy of the filing fee for complex cases in mass joinder cases like this one appears to be an issue for the Legislature, which sets those fees in the first place. For example, the Legislature could set higher filing fees for actions with more joined plaintiffs or, alternatively,

24

impose limits on how many plaintiffs may be joined in a single complaint. But these limits to permissive joinder must come from the Legislature. In the meantime, courts must follow existing law and utilize the tools that the Legislature has seen fit to provide thus far. A court may not, as the court did here, deny joinder of any claims under section 378 and dismiss the claims of all plaintiffs except for the first named plaintiffs in the five actions—435 plaintiffs in total.

Lastly, we are unpersuaded by the trial court's assertion that *J.O. v. Superior Court* (2026) 19 Cal.5th 753 "is significant new authority relevant to the issues presented." In *J.O.*, our high court concluded that "blanket abuses of section 170.6 materially impair judicial operations" and therefore present a separation of powers conflict. (*Id.* at 779.) In reaching this conclusion, the high court explained that "permitting a party to unilaterally decide, for improper reasons, that a judge cannot oversee all or a substantial portion of cases . . . to which he or she is assigned" unconstitutionally interferes with "a 'core judicial function' of court administration." (*Id.* at p. 774.) The evidence here does not come close to presenting an unconstitutional interference with a core judicial function of court administration, especially in light of the manageability tools that are at the trial court's disposal.

### III. <u>DISPOSITION</u>

Let a peremptory writ of mandate issue, directing the trial court to vacate its October 16, 2025 order finding misjoinder and directing single plaintiff complaints to be filed, and enter a new and different order allowing the five originally filed complaints to proceed. The previously issued stay shall dissolve upon issuance of the remittitur. In the interests of justice, each party shall bear their own costs. (Cal. Rules of Court, rule 8.493(a)(1)(A).)

25

CHOU, J.

WE CONCUR.

JACKSON, P. J.
SIMONS, J.

*Smith et al. v. Superior Court* (A174789)

Trial Court:      Superior Court of the County of Alameda

Trial Judge:      Peter E. Borkon

Counsel:      California Civil Rights Law Group, Lawrence Organ, Marqui Hood, Cimone Nunley; Nichols Kaster, Matthew C. Helland, Ricardo Perez; Altshuler Berzon, Michael Rubin, Max M. Carter-Oberstone; Bryan Schwartz Law, Bryan J. Schwartz, Jane Beasley Mackie; The deRubertis Law Firm and David M. deRubertis for all Petitioners.

Chad Finke, Court Executive Officer, Philip B. Obbard, Legal Research Attorney, Alameda County Superior Court, for Respondent.

Reed Smith, Raymond A. Cardozo, Kevin M. Hara, Fatima Mobin, Corinne Fierro; Polsinelli, Christina T. Tellado, Sarah Tremer, Austin Schulz, Billy Sahachartsiri, Kendra Peterson, Kensley Davis, Kritika Thukral, Tyree P. Jones Jr., Sara A. Begley, Dana Feinstein and Catherine Barbaree for Real Party in Interest.